DOROTHY HYLER SHIELDS v. BOBBY MURRAY CHEVROLET, INC.

No. 106

(Filed 3 June 1980)

**Appeal and Error § 64— evenly divided Court—decision affirmed—no precedent**

Where one member of the Supreme Court did not participate in the consideration or decision of a case and the remaining six justices are equally divided, the decision of the Court of Appeals is affirmed without becoming a precedent.

Justice BROCK took no part in the consideration or decision of this case.

PLAINTIFF appeals from a judgment of the Court of Appeals, one judge dissenting, affirming summary judgment for defendant entered as amended by *Barnette, Judge,* at the 3 October 1978 session of District Court, WAKE County. The Court of Appeals' decision is printed at 44 N.C. App. 427, 261 S.E. 2d 238 (1980).

Plaintiff purchased a 1973 Ford Torino station wagon from defendant on 3 July 1975 for $2,995.00, making a cash down payment of $1,500.00. The balance of the price plus finance charges, insurance premiums and fees was financed by the defendant. Plaintiff was to repay defendant in 24 monthly installments of $87.76 each for a total of $2,106.24. As collateral for this purchase money loan, defendant took a purchase money security interest in plaintiff's car.

A year previous to the sale of this car to plaintiff, defendant had contracted with First Citizens Bank and Trust Company (First Citizens), agreeing for valuable consideration to assign to First Citizens any purchase money security interest it had in any car it sold. This contract, referred to as "Retail Protection Agreement" or the repurchase agreement, also provided that if any car buyer defaulted on his car loan and First Citizens repossessed, First Citizens could return the car to defendant and receive from defendant the amount of money owing on the car at the time of repossession.

Specifically, the repurchase agreement provided:

[Bobby Murray Chevrolet] shall purchase form [sic] [First Citizens] each repossessed or recovered car tendered at [its] place of business or if [it is] out of business or in default to [First Citizens] cars may be tendered by registered mail notice sent to [its] last known address. The purchase price, payable on demand and in any event within 30 days after tender, shall be as follows: the unpaid balance due on the car (a) if tendered within 90 days after maturity of the earliest installment still unpaid, or (b) if tender is delayed by a redemption period, litigation, or any existing or future law or executive proclamation then within 30 days after such delay has terminated.

Pursuant to the terms of the repurchase agreement, defendant assigned its purchase money security interest in plaintiff's car

to First Citizens at the moment the car was sold. Thereafter plaintiff made several payments to First Citizens totaling some $787.84. However, plaintiff subsequently defaulted and First Citizens repossessed her car 6 July 1976.

First Citizens attempted to sell plaintiff's car by means of a public sale and mailed plaintiff notice of the sale which was scheduled for 19 July 1976 at the Wake County Courthouse. No bidders appeared at the sale.

Thereafter, on 26 July 1976 pursuant to the terms of the repurchase agreement, First Citizens transferred the car back to defendant and received from defendant the balance owing on plaintiff's contract.

Defendant put the car on its premises for resale and ultimately sold it to P & S Auto Service for $1,550.00. It never gave plaintiff notice of this private sale nor did it return to her some $276.45 plaintiff alleges it made above and beyond the amount it paid First Citizens for the return of the car.

Plaintiff instituted this action 8 July 1977, on behalf of herself and all others similarly situated pursuant to Rule 23, North Carolina Rules of Civil Procedure. She asserted (1) that defendant had violated G.S. 25-9-504(2), G.S. 25-9-504(5) and the terms of the contract of sale in failing to account for and return to her any surplus it had made on resale of the car to P & S Auto Service, (2) that defendant had violated G.S. 25-9-504(3), G.S. 25-9-504(5) and the contract of sale in failing to notify plaintiff of the private sale of the car to P & S Auto Service and (3) that defendant had violated G.S. 75-1.1, the unfair or deceptive commercial practice statute, in keeping any surplus monies on resale, and failing to notify her of resale.

On 4 August 1977, defendant moved to dismiss the complaint for failure to state a claim upon which relief can be granted. This motion was denied on 10 May 1978.

Defendant then answered the complaint 6 June 1978 denying its material allegations and further asserting the defense that it had been high bidder at the public sale held by First Citizens on 19 July 1976 at the Wake County Courthouse.

Defendant filed motion of summary judgment on 18 August 1978 and attached the affidavit of William E. Smith, Assistant Vice-President of First Citizens Bank and Trust Company. Smith stated that because of the repurchase agreement, First Citizens treated the defendant as having placed a bid in the amount due upon the contract at the public sale held on 19 July 1976. It was the defendant's position that it was therefore a purchaser at the public sale of the repossessed car and thus had no further duty to notify plaintiff or to return any surplus to her when it resold the car to P & S.

A hearing on the summary judgment motion was held 8 September 1978. As to the auction held 19 July 1976, the judge presiding found as a fact:

> On July 19, 1978, [sic] the sale advertised was held by the Bank and no third persons bid; at such sales the Bank, because of the Retail Protection Agreement, [repurchase agreement] treats the dealer as having placed a bid in the amount due upon the contract; the fact that the Bank transferred title to the automobile to Defendant through the N.C. Department of Motor Vehicles, rather than merely reassigning the Purchase Money Security Agreement to Defendant bears out the fact *the Bank treated Defendant as having placed a bid in the amount of the balance due. Defendant paid the Bank the balance due of $1,255.39 and the Bank transferred title to Defendant as a purchase[r] at the sale.* (Emphasis added.)

He concluded that there was no genuine issue as to any material fact and therefore the plaintiff was not entitled to recover from the defendant.

Plaintiff appealed to the Court of Appeals. Before that court, plaintiff relied primarily upon the words of G.S. 25-9-504(5) to negate the trial court's finding that the transfer of the car from First Citizens to defendant was a proper public sale. G.S. 25-9-504(5) provides:

> (5) A person who is liable to a secured party under a guaranty, endorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights

and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this article.

The Court of Appeals, one judge dissenting, held that G.S. 25-9-504(5) was inapplicable to the facts of this case. It held that First Citizens had not executed a "transfer of collateral" to defendant but instead First Citizens had executed a change of title. There had been, therefore, no transfer of a security interest and, in fact, this change of title discharged any security interest anyone had in the car. Thus the Court of Appeals in essence held that the defendant had purchased the car at public sale and had no continuing obligation to account to plaintiff for surplus funds on resale, or to notify her of resale.

Plaintiff appealed to this Court as a matter of right.

*Wake-Johnston-Harnett Legal Services, Inc. by Leonard G. Green for plaintiff appellant.*

*Gulley, Barrow & Boxley by Jack P. Gulley for defendant appellee.*

PER CURIAM.

Because of illness, Justice Brock did not participate in this case. The remaining six justices are equally divided as to whether the defendant's evidence when considered in the light most favorable to the plaintiff shows as a matter of law that there has been no violation of G.S. 25-9-504 or G.S. 75-1.1. Accordingly, the opinion of the Court of Appeals is affirmed without precedential value. *See, e.g., State v. Johnson*, 286 N.C. 331, 210 S.E. 2d 260 (1974) and cases cited therein.

Affirmed.

Justice BROCK took no part in the consideration or decision of this case.