EDWIN WAYNE JOYCE AND GLADYS GALLIMORE JOYCE v. CLOVER-
BROOK HOMES, INC., AND CITICORP ACCEPTANCE COMPANY, INC.

No. 8519SC1213

(Filed 3 June 1986)

1. **Uniform Commercial Code § 47— mobile home—notice of foreclosure sale re-
quired**

There was no merit to defendant's contention that it was not required to
give notice of a foreclosure sale under N.C.G.S. § 25-9-504(3) because the
mobile home in question constituted real property not covered by Article 9,
since the Article governs security interests in goods; goods are defined to in-
clude all tangibles which are "moveable at the time the security interest at-
taches"; and the mobile home in question was moveable, tangible property.

2. **Uniform Commercial Code § 47— installment loan contract and deed of trust
assigned—notice of foreclosure sale required**

Where defendant had a repurchase agreement with the company to which
it had assigned a retail installment loan contract and deed of trust, N.C.G.S.
§ 25-9-504(5) conferred the rights and duties of a secured party on defendant,
and it was therefore required pursuant to N.C.G.S. § 25-9-504(3) to give reason-
able notice of foreclosure sale.

3. **Uniform Commercial Code § 47— breach of duty to give notice of foreclosure
sale—calculation of damages**

There was no merit to defendant's contention that the trial court erred in
applying N.C.G.S. § 25-9-507(1) to calculate damages for breach of defendant's
duty to give notice of foreclosure sale under N.C.G.S. § 25-9-504(3), since the
mobile home in question was a "consumer good" covered by that statute.

4. **Consumer Credit § 1— sale of mobile home—security interest in real estate—
no notice to purchasers—violation of Truth-in-Lending Act**

The trial court did not err in concluding that defendant violated the
Truth-in-Lending Act and Federal Reserve Regulation Z, regardless of which
Regulation Z was in effect, since the record showed that defendant did not
give plaintiff a document disclosing that it acquired a security interest in real
property located in Randolph County.

5. **Sales § 13.1; Consumer Credit § 1— purchase of mobile home—Reg. Z—no
right to rescind**

The trial court erred in granting plaintiffs the right to rescind their pur-
chase of a mobile home, since the newer version of Regulation Z explicitly pro-
vided that a person purchasing a mobile home for use as a residence could not
rescind the transaction pursuant to 12 C.F.R. 226.23 (1983), and the older ver-
sion of the Regulation implied that rescission was possible when the purchase
of something other than the purchaser's principal residence was secured by

the purchaser's principal residence, but plaintiffs here intended to dwell in their mobile home.

APPEAL by defendant, Cloverbrook Homes, Inc., from *Helms, Judge.* Order granting plaintiffs' motion for summary judgment and denying defendant's motion for summary judgment entered 22 May 1985. Heard in the Court of Appeals 9 April 1986.

Plaintiffs, husband and wife, purchased a mobile home from defendant Cloverbrook Homes, Inc., on 20 October 1981. The purchase was financed through a retail installment loan secured by a security agreement covering the mobile home and a deed of trust covering real property located in Randolph County. Cloverbrook assigned the retail installment loan contract and the deed of trust to Citicorp Acceptance Company. On 2 December 1981 Mr. Joyce instituted a small claims action against Cloverbrook alleging misrepresentation and breach of warranty. The small claims action was dismissed with prejudice because the magistrate found that Mr. Joyce failed to meet his burden of proof.

The plaintiffs became delinquent in their payments and executed a consent to foreclose on 15 April 1982. On 26 April 1982 Citicorp mailed a notice of repossession and sale stating that the mobile home had been repossessed and would be sold at public auction on 6 May 1982. The mobile home was not sold at public auction. Instead, some time after 6 May 1982, Cloverbrook took the mobile home, placed it on its sales lot and sold it to a third party.

On 1 October 1982 plaintiffs filed an action against Cloverbrook and Citicorp asserting five claims for relief: 1) breach of contract resulting in $6,000 damage; 2) breach of contract giving rise to a right to revoke acceptance; 3) violation of the Truth-in-Lending Act, 15 U.S.C. Sec. 1601 *et seq.* and Federal Reserve Regulation Z, 12 C.F.R. Sec. 226.1 *et seq.* by failing to make adequate disclosure of the loan provisions; 4) failure to conduct a commercially reasonable foreclosure sale; and 5) unfair and deceptive trade practices under G.S. 75-1.1. Plaintiffs settled with Citicorp and entered a voluntary dismissal with prejudice in their action against Citicorp.

Both Cloverbrook and plaintiffs moved for summary judgment. Judge Helms granted plaintiffs' summary judgment motion regarding Cloverbrook's failure to comply with the notice requirements of G.S. 25-9-504(3) and Cloverbrook's failure to comply with the disclosure requirements of the Truth-in-Lending Act and Federal Reserve Regulation Z. Judge Helms denied Cloverbrook's motion for summary judgment regarding plaintiffs' breach of contract claims. From an order of summary judgment granting plaintiffs $49,307.45 in compensatory damages, and $500 in attorney's fees, declaring the deed of trust void, and denying Cloverbrook's motion for summary judgment, Cloverbrook appealed.

*Richard M. Pearman, Jr., for plaintiffs, appellees.*

*William A. Vaden for defendant, appellant.*

HEDRICK, Chief Judge.

Although this case is subject to dismissal for failure to comply with all the rules of Appellate Procedure, we grant defendant's petition for a writ of certiorari in order to address this case on its merits.

[1] Cloverbrook first contends that the trial court erred in granting summary judgment on plaintiffs' claim based upon failure to give notice under G.S. 25-9-504(3) because the mobile home in question constituted real property not covered by Article 9 and because Cloverbrook was not a secured party subject to the duty to give notice. We disagree.

Chapter 25, Article 9 of the North Carolina General Statutes governs security interests in goods. G.S. 25-9-102(1)(a). Goods are defined to include all tangibles which are "moveable at the time the security interest attaches. . . ." G.S. 25-9-105(h). The mobile home in question was moveable, tangible property, and the security interest at issue is governed by Article 9. *See In re Knapp,* 575 F. 2d 341 (1978 2d Cir.). Furthermore, G.S. 41-2.5(a), which provides that "[w]hen a husband and wife become co-owners of a mobile home, in the absence of anything to the contrary appearing in the instrument of title, they become tenants by the entirety with all the incidents of an estate by the entirety in real property," does not dictate a contrary result. G.S. 41-2.5(b).

[2] A party need not be a secured party in order to have a duty to give proper notice of a foreclosure sale. G.S. 25-9-504(5) provides:

> A person who is liable to a secured party under a guaranty, endorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this article.

Cloverbrook had a repurchase agreement with Citibank. A person who is liable to a secured party under a repurchase agreement and takes possession of collateral pursuant to an agreement with the secured party has the rights and duties of a secured party. *See Shields v. Bobby Murray Chevrolet,* 44 N.C. App. 427, 261 S.E. 2d 238, *affirmed,* 300 N.C. 366, 266 S.E. 2d 658 (1980); *Western National Bank of Casper v. Harrison,* 577 P. 2d 635 (Wyo. 1978). Cloverbrook's contention that it was a mere agent of Citicorp without a duty to give notice is without merit. G.S. 25-9-504 (5) confers the rights and duties of a secured party on Cloverbrook.

G.S. 25-9-504(3) requires that "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor." It is undisputed and the record affirmatively demonstrates that this requirement was not met. The trial court did not err in entering an order of summary judgment against Cloverbrook for violating G.S. 25-9-504(3).

[3] Cloverbrook next contends that the trial court erred in applying G.S. 25-9-507(1) to calculate damages for breach of Cloverbrook's duty to give notice under G.S. 25-9-504(3). Cloverbrook argues that the mobile home at issue was not a consumer good and therefore the formula for damages in G.S. 25-9-507(1) should not have been used.

G.S. 25-9-109(1) defines consumer goods as goods "used or bought for use primarily for personal, family or household purposes." The mobile home in question is a consumer good. *See In*

*re Knapp,* 575 F. 2d 341 (1978 2d Cir.). G.S. 25-9-507(1) provides the remedy for failure to give proper notice under G.S. 25-9-504(3):

> If it is established that the secured party is not proceeding in accordance with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part. *If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service plus 10 percent (10%) of the principal amount of the debt or the time price differential plus 10 percent (10%) of the cash price.*

G.S. 25-9-507(1) (emphasis added).

The trial court did not err by applying the consumer goods provisions of G.S. 25-9-507(1) to the case at hand. We note that Cloverbrook merely contends that it is not liable under G.S. 25-9-507(1). Cloverbrook does not contend that the trial court erred in its calculation of damages.

[4] Cloverbrook next contends that the court erred in concluding that Cloverbrook violated the Truth-in-Lending Act, 15 U.S.C. 1601 *et seq.,* and Federal Reserve Regulation Z which was promulgated under authority granted in the Truth-in-Lending Act. We cannot agree.

At the time the transaction in question occurred, 20 October 1981, two versions of Regulation Z were in effect. The Board of Governors of the Federal Reserve System in their "repeal of regulation" statement, pronounced that:

> These regulations, as in effect on March 31, 1981, have been deleted effective October 1, 1982. The new regulations which will replace these regulations are set out following these regulations. They are effective April 1, 1981, but compliance is optional until October 1, 1982.

If there is a genuine issue of material fact as to whether Clover-brook complied with either Regulation Z in effect on 20 October 1981, then summary judgment for plaintiffs was improper.

It is undisputed and the record before us affirmatively demonstrates that Cloverbrook did not give plaintiffs a document disclosing that Cloverbrook acquired a security interest in real property located in Randolph County. Regardless of which Regulation Z was in effect, Cloverbrook was required to give plaintiff a document disclosing Cloverbrook's security interest in the real property. 12 C.F.R. 226.8(a) (1982); 12 C.F.R. 226.8(a)(5) (1982); 12 C.F.R. 226.5(a)(1) (1983); 12 C.F.R. 226.6(c) (1983). Thus summary judgment on plaintiffs' Truth-in-Lending Act and Regulation Z claim was proper. We note once again that Cloverbrook does not contend that the amount of damages or attorney's fees was improper. It contends merely that it was not liable under the Truth-in-Lending Act.

[5]  Cloverbrook also contends that the trial court erred in granting plaintiffs the right to rescind under 12 C.F.R. 226.9 (1982) because the transaction in question is exempt under 12 C.F.R. 226.9(g)(1) (1982). We are again faced with the difficult task of determining the effect of two Regulation Z's simultaneously in force. Just as Cloverbrook had a choice of which Regulation Z disclosure requirements it would meet, plaintiffs may elect which Regulation Z remedies section to use when receiving compensation for Cloverbrook's failure to meet either set of disclosure requirements.

The newer version of Regulation Z explicitly provides that a person purchasing a mobile home for use as a residence may not rescind the transaction pursuant to 12 C.F.R. 226.23 (1983). 12 C.F.R. 226.23(a) (1983); 12 C.F.R. 226.2(19) (1983). While a literal reading of the older version of Regulation Z would allow rescission in the present case, the clear intent of both versions of Regulation Z is to allow rescission when the purchase of something other than the purchaser's principal residence is secured by the purchaser's principal residence. Plaintiffs intended to dwell in their mobile home. The security interests at issue were in plaintiffs' dwelling and secured the purchase price of plaintiffs' dwelling. Therefore, plaintiffs have no right to rescind under

Regulation Z. Summary judgment granting plaintiffs the right to rescind is reversed.

Finally, Cloverbrook argues that the trial court erred in denying its motion for summary judgment on plaintiffs' breach of contract claims. An order denying a motion for summary judgment is interlocutory and ordinarily not appealable. *Golden v. Golden*, 43 N.C. App. 393, 258 S.E. 2d 809 (1979). The appeal with respect to this claim, therefore, is dismissed.

Summary judgment as to plaintiffs' claims based on G.S. 25-9-504(3) and Federal Reserve Regulation Z is affirmed. Summary judgment allowing plaintiffs to rescind under Regulation Z is reversed. Appeal from the denial of defendant's motion for summary judgment is dismissed.

Affirmed in part, reversed in part, dismissed in part and remanded.

Judges WELLS and MARTIN concur.